IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

DEIDRE AGAN,

               Plaintiff,

vs.

BNSF RAILWAY CO.,

               Defendant.

CV 19-83-BLG-SPW

ORDER

Before the Court are the parties' combined motions *in limine*. (See Docs. 95, 96, and 99). Defendant and Plaintiff seek to exclude well over 50 areas of discussion and categories of evidence from trial. (Docs. 95, 96, and 99). The Court grants the motions in part and denies the motions in part as individually delineated herein.

## I.    Legal standards

A motion *in limine* is used to preclude prejudicial or objectionable evidence before it is presented to the jury. The decision on a motion *in limine* is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). A motion *in limine* "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827,

1

at *1 (D. Mont. 2010). Evidence shall be excluded *in limine* only when it is shown that the evidence is inadmissible on all potential grounds. *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *Quad City Testing Laboratory*, 2010 WL 4337827 at *1. "Although rulings on motions *in limine* may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Rulings on motions *in limine* are provisional and the trial judge may always change their mind during the course of trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

## II.    Discussion

### A. Defendant's first set of motions

#### 1. Size or financial condition of BNSF, Berkshire Hathaway, Warren Buffet, or BNSF's law firm

Defendant seeks to exclude evidence regarding the size and wealth of BNSF or its parent companies, as well as the size of its law firm, as irrelevant. (Doc. 98 at 8). Plaintiff does not intend to refer to the size or wealth of Berkshire Hathaway, but seeks to ask potential jurors during *voir dire* if they have a financial interest in BNSF or its parent company Berkshire Hathaway. The Court agrees

2

that this is permissible.  Plaintiff also seeks to introduce evidence of BNSF's size as relevant in comparison to what a similarly-sized and situated reasonable business should do under the same circumstances.  (Doc. 102 at 7).  The size of BNSF is not relevant in the Court's view.  Reasonableness can be discussed without referencing BNSF's size, as such discussion would primarily serve to highlight and invite improper comparison regarding the size and wealth of the litigants.  The motion is denied except as to the voir dire issue.

2. <u>FELA as Plaintiff's sole remedy</u>

BNSF seeks to bar any statements that FELA is the only source of recovery for Plaintiff as irrelevant.  (Doc. 99 at 9).  Plaintiff agrees that she will not refer to FELA as the "sole and exclusive remedy," but opposes the motion to the extent that Agan would like to inform the jury during *voir dire* or jury instructions that this is not a workers' compensation case and that Plaintiff is not eligible for such benefits.  (Doc. 102 at 8).  Given the complex and unusual nature of FELA lawsuits (see *CSX Transp., Inc. v. Miller*, 858 A.2d 1025 (Md. Ct. of App. 2004)), the Court agrees with Plaintiff that some discussion of FELA may be necessary to properly inform the jury; so, to that extent, the motion is granted in part and denied in part.

3

### 3. History and remedial purpose of FELA

Defendant seeks to exclude evidence or discussion of the history and legislative purpose of FELA. (Doc. 98 at 9-10). Plaintiff does not oppose exclusion and, accordingly, the motion is granted.

### 4. References to placing profits over safety

Defendant requests that the Court exclude argument or testimony that BNSF places profits over safety. (Doc. 98 at 11-12). Punitive damages are not available in FELA suits. *Kozar v. Chesapeake & Ohio Ry. Co.*, 449 F.2d 1238, 1240 (6th Cir. 1971). BNSF's profits relative to its emphasis on safety is irrelevant to whether BNSF was negligent in this specific instance and references to its profit margins are likely more prejudicial than probative. The motion is granted.

### 5. Railroad work as inherently dangerous

Defendant seeks to bar references to railroad work as being inherently dangerous. (Doc. 98 at 12-14). Inherent danger is a legal term of art that refers to acts which present "unreasonable risk of harm to others although it is done with all possible care, competence, preparation, and warning." Rest. 2d Torts § 297. Plaintiff does not offer argument on how railroad work would qualify as such an act. Accordingly, the motion is granted, and Plaintiff may not refer to the work as inherently dangerous. This ruling does not bar Plaintiff from discussing any specific risks she may have faced.

4

6. <u>Punitive or exemplary damages</u>

As stated above, punitive damages are not available in FELA cases. *Kozar*,

449 F.2d at 1240. As such, any reference or suggestion that punitive damages are

available or that the jury should punish Defendant beyond a level commensurate to

the injury suffered is inappropriate. The motion is granted.

7. <u>Removal of trees after the incident</u>

BNSF seeks to bar reference to its later removal of other trees along the

track near the area where the tree that caused this accident fell as subsequent

remedial measures made inadmissible under Fed. R. Evid. 407. (Doc. 98 at 15).

The rule states:

> "[w]hen measures are taken that would have made an earlier injury or harm less
> likely to occur, evidence of the subsequent measures is not admissible to prove:
> - Negligence;
> - Culpable conduct;
> - A defect in a product or its design; or
> - A need for warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment
> or—if disputed—proving ownership, control, or the feasibility of precautionary
> measures."

Accordingly, the Court holds that the removal of the other trees cannot be

referenced to prove negligence, only ownership, control, or feasibility of

precautionary measures. The motion is granted to that extent.

8. Removal of BNSF's safety hotline

Defendant seeks exclusion of evidence regarding BNSF's cancellation of its safety hotline as irrelevant. (Doc. 98 at 15-18). The Court agrees that, unless evidence is presented linking the cancellation to the accident or the inadequacy of the replacement system, references to the cancellation of the safety hotline are irrelevant and the motion is granted.

9. Lay witness testimony regarding the tree

BNSF seeks to bar lay witness testimony regarding the condition of the fallen tree, asserting that only an expert can testify as to those facts. (Doc. 98 at 19-20). This matter was previously directly addressed during the summary judgment phase of the case. (Doc. 85 at 15 and Doc. 87 at 11). Expert testimony is not required in this circumstance because no specialized knowledge is required, beyond what is expected of all prudent landowners, to determine whether a tree presents a hazard, as the Court previously ordered. BNSF's new argument that the health of a tree is analogous to expert opinions regarding medical treatment and health borders on incredulity and does not change the Court's prior ruling. The motion is denied.

10. Conclusions based on photographs of the tree

Defendant seeks to bar the jury from comparing two photographs of the tree at issue, stating that the pictures are "taken from very different locations" and show

6

"separate angles, heights, and distances from the tree," apparently making comparison by counsel or lay witnesses "impossible." (Doc 98 at 21). This plainly goes to the weight of the evidence, rather than its admissibility. BNSF is free to argue to the jury that comparison between the photographs is unreliable, but the matter is unsuited for resolution through a motion *in limine* and the motion is denied.

11. Climatology data

BNSF requests that two climatology reports, one from Hardin and one from Pompey's Pillar, be excluded as irrelevant because those locations are approximately 30 and 20 miles from the accident site, respectively. (Doc. 98 at 22-23). Once again, this speaks to the weight the jury should give the evidence rather than its relevance. Although closer weather stations offer greater precision, the Court cannot conclude that a weather report from nearby is irrelevant to the weather experienced at the accident site. The motion is denied.

12. Risk of derailment

BNSF seeks to restrict discussion of the potential risks of train derailment caused by fallen trees because it would "do no more than incite the passions of the jury." (Doc. 98 at 23). The Court cannot follow BNSF's argument here and BNSF makes no citations to any authority to assist the Court. Accordingly, the motion is denied.

13. Comments on credibility of witnesses

BNSF asserts that Plaintiff's counsel should be barred from commenting or soliciting commentary on the credibility of witnesses in this matter, asserting that a lawyer should not state personal opinions on a witness's credibility. (Doc. 98 at 23-24). Obviously, the Court does not permit attorneys to offer personal opinions as to a witness's credibility. Determinations regarding witness credibility are the sole province of the jury. To this extent, the motion is granted. The Court will allow counsel to argue that evidence or testimony is conflicting or to draw comparisons between a witness's testimony and other evidence, as it relates to their credibility.

14. Gambrel emails

Defendant seeks to exclude emails from Amanda Gambrel, BNSF's former director of its vocational rehabilitation program, asserting broadly that the emails lack foundation, constitute hearsay, lack relevance, and any probative value is outweighed by prejudice. (Doc 98 at 24-25). BNSF does not clearly, at any point, define the precise contents of the emails. Plaintiff states that they do not intend to introduce the emails in their case-in-chief, but she asserts that the emails may become relevant depending on the evidence BNSF produces at trial. Given the lack of information the Court has regarding the emails, a ruling on the motion is reserved until trial.

8

*B. Defendant's second set of motions*

1.  Insubordination or discipline

Defendant argues that Plaintiff should be barred from arguing that an employee who does not follow BNSF's rules is considered insubordinate because such evidence is irrelevant and prejudicial. (Doc. 100 at 9-10). Without context provided through trial, the Court cannot determine that references to insubordination or disciplinary procedures would be irrelevant and therefore reserves ruling on this motion.

2.  BNSF denying responsibility

BNSF asserts that Plaintiff "should be prohibited from arguing or claiming that BNSF 'denied responsibility' for the accident at issue." (Doc. 100 at 10-11). BNSF has expressly denied responsibility and is contesting negligence in this case. The motion is denied.

3.  Safety team meeting minutes

Defendant seeks to exclude argument or evidence regarding missing safety team minutes for the track section at issue, claiming that it is unfair to assert that BNSF should have these minutes, and that Plaintiff has produced no evidence that any minutes ever existed. (Doc. 100 at 11-12). BNSF asserts that the safety team was made up of union members, not management, and the safety team minutes

9

were the responsibility of the safety team (both creating the minutes and retaining the minutes). However, BNSF fails to cite to any portion of the record in support of these statements. *Id.* BNSF's corporate representative, Joe Mikes, testified that it is BNSF's policy to retain safety team minutes for seven years and that other safety team minutes were found in the Forsyth office, while the April 2016 records were missing. (Doc. 103, Ex. 1). Mikes also testified that he spoke with the train master regarding the missing safety team minutes, implying at least, that it was someone other than BNSF's responsibility to retain the safety team minutes. *Id.* Only if Plaintiff can lay the foundation that the relevant safety team minutes were actually created, and it was BNSF's responsibility to retain the safety team minutes, will the Court allow the evidence of the missing safety team minutes to be admitted. The Court will reserve ruling on this motion until trial.

4. Evidence regarding other fallen trees

BNSF asserts that Plaintiff should be barred from arguing that other trees in the vicinity fell because there has been no expert presented and that other trees falling in the vicinity cannot have put BNSF on notice that the subject tree would or may fall. (Doc. 100 at 12-13). The expert testimony issue has already been dealt with and denied. See II.A.9, *supra*. Evidence of other trees in the vicinity falling is simply factual; either they did or they didn't. Obviously, the trees would need to have fallen prior to the derailment and BNSF would have to have been

aware of the trees falling for the evidence to be relevant to notice. It is for the jury to decide the importance or lack thereof of this evidence. The motion is denied.

5. "Reptile theory" and "golden rule" arguments

BNSF seeks to preclude Plaintiff from utilizing "golden rule" arguments and tactics based on the so-called reptile theory. (Doc. 100 at 13-14). The golden rule refers to arguments that ask the jury to imagine themselves as the Plaintiff and grant the relief they would desire in that position. 75A Am. Jur. 2d *Trial* § 540. The Court grants the motion as to golden rule arguments.

The Court has never heard of the reptile theory before. BNSF opaquely defines the reptile theory, stating that its purpose is "to improperly influence juries and their verdicts by focusing on community safety and associative pleas in order to appeal to the self-interest of juries." (Doc. 100 at 14). The Court understands the reptile theory to be a strategy of inflaming the passions of jurors by pushing their brains into survival mode, and therefore, the theory goes, the jurors return verdicts based on emotion, rather than logic. The jury will be instructed they may not make a decision based upon sympathy, passion or prejudice. The Court will not categorically prohibit a trial strategy, particularly without any evidence or examples of how such a theory is likely to arise. The motion is denied as to the "reptile theory."

6. Plaintiff's bills being sent to collections

BNSF moves to exclude evidence that any of Plaintiff's medical bills were sent to collections for nonpayment, stating that such evidence is irrelevant. (Doc. 100 at 18). Plaintiff states that they are relevant because she presented them to Defendant for payment and because BNSF contested liability, the resulting nonpayment has impaired her credit rating. (Doc. 103 at 16). The Court finds that this link is too tenuous and that the bills being sent to collections is irrelevant. The motion is granted.

7. Plucinski testimony

BNSF seeks to exclude John Plucinski's testimony regarding his prior identification of the subject tree as a potential hazard. (Doc. 100 at 17-19). BNSF apparently believes that Plucinski recanted his recollection during deposition and accordingly his testimony must be barred under Rules 401 through 403.[1] Plaintiff contends that Plucinski did not recant, and that BNSF is mischaracterizing his deposition testimony. (Doc. 103 at 16-17). The credibility of witnesses is a matter for the jury and if BNSF believes Plucinski's testimony has changed over time, they are free to cross-examine him on that point. The motion is denied.

---

[1] This is one of many times BNSF makes broad citations to the rules of evidence without any explanation as to how the rules apply to their argument. This practice is unacceptable as it creates additional work for the Court trying to fill in the blanks of BNSF's argument. In the future, motions with citations to the law without any analysis will not be well taken.

8. References to paid medical bills

Defendant seeks to bar any reference to already-paid medical bills as irrelevant and misleading. (Doc. 100 at 19-20). Plaintiff also seeks to bar any reference to medical bills paid by BNSF or insurance. (Doc. 97 at 18-19 and Plaintiff's motion in limine no. 9, discussed *infra.*) The Court agrees that previously paid medical bills are irrelevant. The motion is granted.

9. Safer alternative methods

BNSF moves to exclude any evidence that it could have provided safer alternative methods of work, on the grounds that such evidence is not probative as to whether it provided the Plaintiff reasonably safe methods, locations, and tools for work. (Doc. 100 at 20-22). However, in the Court's view, references and comparisons to potential safer alternative methods of work can be relevant to what constitutes reasonable care. The jury cannot be expected to determine reasonability in a vacuum. The motion is denied.

10. Referring to BNSF as "The Railroad" or use of witnesses' first names or nicknames

BNSF asks the Court to preclude any reference to BNSF as "the railroad," on the grounds that it would be prejudicial. (Doc. 100 at 22-23). Additionally, it requests that all witnesses be referred to by their surnames only. The Court cannot fathom how referring to BNSF as "the railroad" could reasonably be prejudicial.

13

BNSF Railway is a freight railroad, and the Court will not bar witnesses from calling it "the railroad." This portion of the motion is denied.

The Court expects that attorneys will respectfully address witnesses by their names and titles, and this includes primarily referring to them by their last names. However, this is not an appropriate ground for a motion *in limine* and, therefore, the motion is denied.

11. BNSF's Safety Vision

BNSF asserts that any testimony, evidence, or argument regarding the BNSF "Safety Vision" should be excluded as irrelevant because the duty of care is supplied by FELA and not the railroad's own safety practices. (Doc. 100 at 24-25). The Court is not entirely sure what the "Safety Vision" fully encompasses, in part because Defendant takes no care to define it, offering little clarity to the Court about the precise parameters of the motion *in limine*. Furthermore, evidence of BNSF's safety practices, including its "Safety Vision," may be relevant to its duty to provide a safe workplace and appropriate for jury consideration. Any confusion about the relevant standards will be cured through appropriate jury instruction. A ruling on the motion is reserved until trial.

12. References to uncalled witnesses

Defendant requests that Plaintiff be prohibited from discussing uncalled witnesses and their potential testimony. (Doc. 100 at 25-26). Any ruling on a so-

14

called "missing witness" issue is necessarily fact intensive. *See United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982). As such, the Court will reserve ruling on the motion and expects the parties to notify the Court outside the presence of the jury if the issue is going to be broached.

13. Stress of litigation damages

BNSF seeks to exclude any testimony or discussion of the stress of litigation on Plaintiff or implication that damages stemming from that stress are recoverable. (Doc. 100 at 27). Plaintiff does not oppose this motion, and accordingly, the motion is granted.

14. References to Plaintiff's family members

Defendant moves to exclude any reference to Plaintiff's family circumstances on the grounds that loss of consortium is not recoverable under FELA. (Doc. 100 at 27-28). BNSF is correct that loss of consortium is not recoverable here; however, loss of Plaintiff's quality of life (including time spent with family) is a recoverable injury. So long as the references are sufficiently linked to a recoverable injury, Plaintiff may reference her family circumstances. The motion is denied.

15. Taxation of any award

Defendant argues that Plaintiff should not be permitted to argue or suggest that she is required to pay income tax on any damage award. (Doc. 100 at 28).

Plaintiff may not argue that income tax must be paid on the award (because that would be untrue, 26 U.S.C. § 104 (a) (2)), however it may be appropriate to calculate the after-tax income amounts in calculating potential earnings. *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 495 (1980). Accordingly, the motion is granted.

16. <u>Settlement negotiations</u>

BNSF seeks to exclude any discussion of settlement negotiations. (Doc. 100 at 28-29). Plaintiff agrees, and accordingly, the motion is granted.

17. <u>Motions *in limine* and discovery disputes</u>

BNSF seeks to exclude any discussion of these motions *in limine* and any discovery disputes. (Doc. 100 at 29). Plaintiff agrees, and accordingly, the motion is granted.

18. <u>Plaintiff's and witnesses' reputation as employees</u>

BNSF seeks to preclude discussion of Plaintiff's and witnesses' reputations as employees as impermissible character evidence. (Doc. 100 at 30). Fed. R. Evid. 404 (a) (1) prohibits evidence of a person's character to prove that on a particular occasion the person acted in accordance with that trait. However, Rule 406 permits evidence of a person's habit or routine practice to prove conformance. An order broadly excluding all reputation evidence is inappropriate because not all reputation evidence is character evidence. The motion is denied.

19. Undisclosed expert witness testimony

BNSF asks the Court to preclude Plaintiff from eliciting undisclosed expert testimony or opinion because it might be improper or prejudicial. (Doc. 100 at 30). Obviously, the Federal Rules of Evidence and Civil Procedure will govern the trial. However, exceptions may exist as to yet-undisclosed expert testimony or opinion and a ruling barring those exceptions is inappropriate at this time. A ruling on the motion is reserved.

20. Unproduced documents

BNSF asks the Court to preclude Plaintiff from seeking to admit documents not properly disclosed during discovery. (Doc. 100 at 31). Obviously, the Federal Rules of Evidence and Civil Procedure will govern the trial. For now, though, the Court will deny the motion as overbroad and speculative because Defendant has not demonstrated any tangible issue.

21. Equal time at trial

BNSF requests that the parties get equal time in front of the jury and requests that the court divide the trial time in half and use a stopwatch to precisely deduct each party's speaking time from its allotment. (Doc. 100 at 32). BNSF asserts that this will prevent Plaintiff from arguing that she was disadvantaged by not having enough time to present her case. This argument seems illogical, as placing a strict time limitation may in fact hamper the Plaintiff's ability to fully

present her case. The parties will each be permitted the amount of time necessary to present their case. The Court denies the motion.

### 22. Exclusion of witnesses

BNSF seeks to exclude witnesses and potential witnesses from the courtroom under Fed. R. Evid. 615. (Doc. 100 at 33). Plaintiff agrees and accordingly, the motion is granted. Witnesses shall be excluded from the courtroom prior to their testimony and excusal.

### C. *Plaintiff's motions*

### 1. Date and venue of case filing

Plaintiff seeks to exclude any evidence regarding the date and venue of case filing. (Doc. 97 at 8). BNSF does not oppose this motion, and accordingly, it is granted.

### 2. Plaintiff's consultation with attorneys

Plaintiff seeks to exclude discussion of when and why she consulted with attorneys. (Doc. 97 at 8-9). BNSF does not oppose this motion, and accordingly, it is granted.

### 3. Collateral source benefits

Plaintiff asserts that Defendant should not be allowed to present any evidence that she has received and/or will receive collateral source benefits, such as retirement benefits, because such evidence is irrelevant, unduly prejudicial, and

18

barred under *Eichel v. New York Central R.R.*, 375 U.S. 253 (1963) and its progeny. (Doc. 97 at 9-11). The Court agrees with Plaintiff. The motion is granted.

### 4. Reduction of earnings based on retirement withholdings

Plaintiff seeks to exclude reference to any Railroad Retirement taxes that would have applied to lost wages because those same taxes are levied on any FELA recovery award. (Doc. 97 at 11-13). The Court agrees with Plaintiff's position, and the motion is granted.

### 5. Claims that Plaintiff "sued the men and women of BNSF"

Plaintiff seeks to bar Defendant from claiming that she is suing "the men and women of BNSF Railway," as apparently defense counsel has said in previous cases, as misleading and prejudicial. (Doc. 97 at 13). The Court agrees that any such statements would be misleading. The point of a corporate entity is that it legally exists outside of the men and women who work for it. The motion is granted.

### 6. BNSF's safety training or safety awards

Plaintiff asserts that BNSF should be barred from presenting evidence that it provides safety training and has won industry safety awards for its programs. (Doc. 97 at 13-14). At this point, the motion is overbroad, and the Court cannot

say which safety trainings may or may not be relevant. As such, a ruling on the motion is reserved.

7. <u>Assumption of the risk and empowerment arguments</u>

Plaintiff asserts that BNSF should be precluded from making any reference or argument regarding assumption of the risk or empowerment to refuse to work in unsafe conditions. (Doc. 97 at 14-16). Assumption of the risk as a defense is categorically barred by FELA. 45 U.S.C. § 54. Under FELA, an injured employee is entitled to damages if the railroad's negligence played any part in producing the injury, no matter how slight. *Taylor v. Burlington N. R.R.*, 787 F.2d 1309, 1314 (9th Cir. 1986). Assumption of the risk embraces an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for her to perform her job duties. *Id.* at 1316. Contributory negligence is where a careless act or omission on the plaintiff's part adds new dangers to conditions that the employer negligently created or allowed to exist. *Id.* Defendant argues that Plaintiff did not file a safety report or request a slow order and that there are "additional safety procedures in place if employees actually did complain about something that was a safety risk and felt the complaints were ignored which Plaintiff did not avail himself [sic] of." This is an assumption of the risk argument because it does not assert that Plaintiff created or added a new danger. The motion is granted.

8. "Empty chair" argument

Plaintiff seeks to prohibit any argument by Defendant that another non-party is responsible for the incident (sometimes called the "empty chair"). (Doc. 97 at 17-18). Defendant cryptically suggests that Plaintiff has hinted that a non-party "may have performed some acts upon the tree at issue." (Doc. 101 at 15). The Court has no clue what this is in reference to or what BNSF wishes the Court to do with this information. In FELA suits, the relevant question is whether the defendant railroad "caused or contributed to" a railroad worker's injury. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 704-05 (2011). Given this standard, arguments shifting blame onto a third party are irrelevant to the FELA case. Accordingly, the motion is granted.

9. Paid medical bills and references to insurance

Plaintiff seeks to exclude evidence that her injury-related medical treatment bills have been paid by Defendant or covered by medical insurance as irrelevant and confusing because she is seeking compensation for unpaid medical bills and future medical bills. (Doc. 97 at 18-19). The Court agrees. Discussions of previously paid medical expenses have no bearing on calculating the damages amount sought and have a high likelihood of confusing or misleading the jury. Accordingly, the motion is granted.

10.Medical insurance

Plaintiff seeks to exclude evidence that her injury-related medical treatment may be covered by medical insurance on the grounds that it is a collateral source and therefore barred. (Doc. 97 at 19). Defendant responds that Plaintiff is currently covered by BNSF insurance and that the evidence is relevant "as the jury could conclude that Plaintiff has failed to mitigate her damages by not attempting to work an appropriate job at BNSF and thereby avail herself of insurance." (Doc. 101 at 16). The Court does not know what Defendant means by "an appropriate job." Defendant next relies on a 1987 holding that Burlington Northern's insurance coverage was not a collateral source under FELA. *Folkestad v. Burlington Northern*, 813 F.2d 1377, 1383 (9th Cir. 1987). However, in *Folkestad*, the Ninth Circuit concluded that the specific language of the insurance coverage provision in the collective bargaining agreement was determinative. *Id.* Defendant does not provide the Court with the language from the current agreement, and instead suggests that the 1975 agreement at issue (under a pre-merger predecessor to BNSF) in *Folkestad* resolved the issue. The Court cannot believe that in the intervening 40-some years, the insurance provision language remained static. Accordingly, BNSF has not made a showing that the medical insurance coverage benefits are explicitly intended to indemnify BNSF against FELA liability, as

22

required by *Folkestad*.[2]  BNSF failed to produce the provision or demonstrate that the provision meets the requirements imposed by the Ninth Circuit.  The motion is granted.

11. Communications between attorneys or attorneys and parties

Plaintiff asserts that Defendant should be barred from introducing evidence regarding communications between the attorneys in this case or communications between attorneys and parties as irrelevant and confusing to the jury.  (Doc. 97 at 19).  The Court has already ruled that discovery disputes and settlement discussions are excluded.  See *II.B.16 and II.B.17, supra*.  As to nonprivileged communications between the attorneys and parties, the matter is reserved, as a ruling will turn on the specifics of the communications sought to be introduced.

12. Erpelding testimony regarding treatment recommendations

Plaintiff requests that the Court bar testimony from Defendant's medical expert, Dr. Erpelding, regarding treatment recommendations, arguing that Erpelding merely performed an IME and is not Plaintiff's treating physician.  (Doc. 97 at 20).  Granting this motion would unfairly restrict BNSF's ability to contest Plaintiff's claims and, so long as proper foundation is laid establishing

---

[2] In fact, BNSF's statement regarding Plaintiff's alleged failure to work an "appropriate job" to avail herself of insurance raises substantial questions about the matter. *Folkestad* turned in part on whether the benefits are intended to fulfill FELA obligations, meaning coverage is triggered at the time of the accident, rather than doled out in installments. 813 F.2d at 1381. Coverage being dependent on continued employment, as BNSF seems to state is the case here, tends to show a collateral source benefit instead—which would be barred from discussion at trial.

23

Erpelding's qualifications to make an informed opinion regarding future treatment, such testimony is appropriate. The motion is denied.

13. Undisclosed expert opinions or bases of opinions

Plaintiff requests that Defendant be barred from introducing any opinion testimony not disclosed in the written report or deposition testimony of its expert or by any of Plaintiff's witnesses. (Doc. 97 at 20). BNSF responds that it does not intend to offer testimony regarding undisclosed expert opinions but reserves the right to have its experts rebut or discuss the testimony offered by Plaintiff. (Doc. 101 at 18). Obviously, the Federal Rules of Evidence and Civil Procedure will govern the trial. The motion is granted.

14. Personalization by defense counsel

Plaintiff requests that Defendant be precluded from making improper personalization, opinion, or commentary on Plaintiff or her attorneys. (Doc. 97 at 20-21). The genesis for this request is a 2015 Montana Supreme Court case chastising BNSF's counsel for repeated, egregious violations of motions *in limine* as well as opinion commentary suggesting that union members and union employees were collaborating to gin up bogus lawsuits and encouraging jurors to speculate as to the plaintiff's motives. *Anderson v. BNSF Ry.*, 354 P.3d 1248, 1267-69 (Mont. 2015). BNSF asserts that the motion is unclear as to what "improper personalization" consists of and the motion is overbroad. (Doc. 101 at

18-19).  The Court agrees that a precise demarcation of what constitutes

impropriety is difficult to establish ahead of time, but the Court will not allow any

argument by Defendant regarding its opinion of individuals who sue BNSF.  Such

opinion is not relevant and is improper argument.  It is the jury's role to determine

the legitimacy of Plaintiff's claims against BNSF based on the evidence presented

in *this* case.  The motion is granted.

### 15. Plaintiff's financial or pecuniary circumstances

Plaintiff seeks to limit discussion of her financial or pecuniary circumstances

as irrelevant and misleading.  (Doc. 97 at 22).  The Court agrees that Plaintiff's

financial status has no bearing on the elements of the case.  The motion is granted.

### 16. Past rule violations or discipline

Plaintiff asserts that Defendant should be barred from referencing any

disciplinary proceedings imposed against her during her railroad career or alleged

rule violations as far more prejudicial than probative.  (Doc. 97 at 22-23).  The

Court agrees.  Such proceedings would have little relevance to the negligence

claim underlying this suit and would tempt the jury to render a verdict based on

unrelated bad acts.  The motion is granted.

### 17. Unrelated medical conditions and treatment

Plaintiff seeks to preclude any discussion of her medical conditions that are

unrelated to the cervical spine and shoulder injuries she is seeking compensation

for as irrelevant. (Doc. 97 at 23-25). Plaintiff brings this motion because BNSF's

retained medical consultant, in his report, listed 56 health conditions, including

tobaccoism, PTSD, obesity, allergies, sleep disorders, bipolar disorder, and

OB/GYN issues. Discussion during trial will be cabined to the injuries claimed

and directly flowing from the accident at issue. Evidence of other, unrelated

medical issues would be irrelevant and misleading. The motion is granted.

18.Past psychological diagnoses and treatment

Similarly, Plaintiff seeks to exclude evidence of past psychiatric diagnoses

and mental health treatment as irrelevant and beyond the scope of the garden

variety pain and suffering and emotional distress claims she pled in the complaint.

(Doc. 97 at 25-26). The motion is granted for the same reasons as the preceding

motion.

19.Improper legal opinions

Plaintiff wants to prohibit Defendant from eliciting any testimony regarding

whether any conduct constituted a violation of the law or testimony explaining or

interpreting the law as improper legal opinion evidence. (Doc. 97 at 26-27).

Testimony encompassing legal opinion is inappropriate—it is the Court's job to

instruct the jury on the law. *Mont. City Meats, Inc. v. Hamel*, 2017 U.S. Dist.

LEXIS 201696, at *9-*10 (D. Mont. 2017). The motion is granted.

20. References to the death of expert Ball

Plaintiff seeks to prohibit any evidence or argument concerning the death of Defendant's initial retained accident reconstruction expert, Jeffery Ball, on relevance grounds. (Doc. 97 at 28). Defendant states that it does not intend to reference Ball's death at trial. (Doc 101 at 22-23). As such, the motion is granted.

21. AMA articles

Plaintiff challenges the admissibility of AMA publications relied on by Defendant's medical expert as hearsay not conforming to the learned treatise exception. (Doc. 97 at 28-33). Plaintiff concedes that experts may rely on hearsay but seeks to preclude the admission of the guides themselves, including by reference. (Doc. 105 at 13-14). The guide specifically at issue is the "AMA Guides to the Evaluation of Disease and Injury Causation, 2d Edition." A statement contained in a treatise, periodical, or pamphlet may be read into evidence if it is established as a reliable authority through an expert's admission or testimony or by judicial notice. Fed. R. Evid. 803 (18). Trial judges must act as gatekeepers, ensuring that any treatise admitted is authoritative. Wright & Miller, Fed. Prac. & Proc. Evid. § 6938 (2022 ed.) (citing *Constantino v. Herzog*, 203 F.3d 164, 171 (2d Cir. 2000). It is important that the treatise be written primarily and impartially for professionals. Fed. R. Evid. 803 (18), Advisory Comm. Note; 6 Wigmore § 1692. Here, the Court is not satisfied that the AMA Guide reaches that

standard.  It appears to be written primary for litigation purposes and seems to be meant to assist defense experts in workers' compensation cases to minimize or limit disability findings.  (See Doc. 97-3 at 2).  This undermines its utility and reliability as a learned treatise.  An expert may still rely on the guide, but it may not be read into evidence.  The motion is granted.

### III.   Conclusion

Accordingly, IT IS ORDERED that Defendant BNSF's Motions *in Limine* (Docs. 95 and 99) are GRANTED IN PART and DENIED IN PART.  IT IS FURTHER ORDERED that Plaintiff Agan's Motions *in Limine* (Doc. 96) are GRANTED IN PART and DENIED IN PART.  This ruling is subject to reconsideration at trial.

DATED this 26th day of August, 2022.

SUSAN P. WATTERS
United States District Judge